[No. C043114. Third Dist. June 22, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDHIR SINGH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

___

*Pursuant to the California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III, IV and V of the Discussion.

**COUNSEL**

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stan Cross and Lee E. Seale, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUTZ, J.**—In the summer of 2001, defendant Randhir Singh was arrested three times within eight weeks, resulting in an amended information charging him with seven felonies. On July 7, 2001, defendant was found in a hotel room with over 54 grams of methamphetamine and a loaded shotgun. He was charged with possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378—count one), possession of methamphetamine while armed with a loaded shotgun (*id.*, § 11370.1, subd. (a)—count two), and possession of methamphetamine (*id.*, § 11377, subd. (a)—count three). As to count two, it was further alleged defendant was personally armed with a firearm during the commission of the offense (Pen. Code, § 12022, subd. (c)).

After being released on bail on these charges, two weeks later on July 21, 2001, defendant was found in an office at a car dealership with a large block of methamphetamine, a glass pipe, a scale, and a 40-ounce beer bottle. When police arrived, defendant resisted arrest, fought the officers, and threw the beer bottle at an officer's head. Additional charges were filed against defendant, including possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378—count four) and assault with a deadly weapon (Pen. Code, § 245, subd. (c)—count five). As to each of these counts, it was further alleged that defendant committed these offenses while released from custody pending trial in another matter (Pen. Code, § 12022.1).

Approximately one month later, on August 29, 2001, defendant was met at an apartment by deputy sheriffs. When they attempted to arrest him, he fought them, throwing punches and kicking them. He was in possession of over 29 grams of methamphetamine. Once again, additional charges were added to the information. Defendant was charged with possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378—count six), and felony resisting arrest (Pen. Code, § 69—count seven). It was further alleged as to each of these charges that defendant committed these offenses while released from custody pending trial in another matter (Pen. Code, § 12022.1).

Following a jury trial in April 2002, defendant was found guilty as charged. Defendant was sentenced to an aggregate term of nine years eight months in state prison.

On appeal, defendant claims that there is insufficient evidence supporting the convictions stemming from the July 7 possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378—count one) and possession

of methamphetamine while armed with a loaded shotgun (*id.*, § 11370.1, subd. (a)—count two), in that there is insufficient evidence he exercised dominion and control over the methamphetamine in the hotel room. As to count two, he also contends there was insufficient evidence he was aware of the presence of the shotgun in the room and that he was personally armed (Pen. Code, § 12022, subd. (c)). Finally, as to the charges stemming from the July 7 arrest, he contends he could not properly be convicted of both the possession of methamphetamine with intent to sell (count one) and the lesser included offense of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)—count three). As to the charges arising from the July 21 arrest, defendant contends there was insufficient evidence showing he intended to use the beer bottle as a deadly weapon (Pen. Code, § 245, subd. (c)—count five), and that the trial court committed prejudicial error by failing to instruct the jury sua sponte with CALJIC No. 12.42,[1] defining a deadly weapon. We shall reverse the conviction for simple possession of methamphetamine on July 7 (count three), and affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 7, 2001, Roseville police officers received an anonymous tip that "Antonelli" was selling methamphetamine out of a hotel room. Officers went to the hotel and ultimately arrested Jeffrey Antonelli as he sat inside a parked car in the hotel parking lot.

The officers then went to Antonelli's room and knocked on the door. Luke Garcia let them inside, where they saw two bongs, a digital scale covered with a white powder residue, and a loaded shotgun partially concealed by a pillow on one of the two beds. Defendant was seated on the bed with the shotgun. Between the two beds were two plastic bags filled with methamphetamine. In all, approximately 54 grams of methamphetamine were recovered from the hotel room. Defendant was arrested and searched, and the officers found an additional 0.33 grams of methamphetamine on his person.

On July 21, 2001, Sacramento County sheriff's deputies were dispatched to a reported burglary at a car dealership. A janitor led them through the showroom to her boss's office, the door of which was open. Defendant was in the office sitting on a couch with another man sitting across from him. As the deputies entered the room, the defendant was facing them. On the coffee table

---

[1] CALJIC No. 12.42 (1998 rev.) (6th ed. 1996) (Jan. 2002 supp.) would have been the operative instruction in this case (hereafter CALJIC No. 12.42).

between the men was a four-inch by six-inch block of methamphetamine, a scale, and a 40-ounce glass beer bottle. Defendant was bent over the methamphetamine holding a glass pipe. Defendant was ordered to stand and put his hands behind his back. Instead, he took the scale and pipe and threw them into the corner.

Defendant lunged toward the methamphetamine, spreading it around the table and stomping it on the ground. Deputy Stacy Jaquith tried to put defendant in a wristlock, but he threw her against the wall. He then continued throwing the methamphetamine on the ground, spreading it around.

Another deputy, Samuel Seo, again ordered defendant to put his hands on his head, and he continued to refuse. Deputy Seo struck defendant with his baton two times on his upper legs. Despite these blows, defendant continued spreading the methamphetamine on the ground. Deputy Jaquith again tried to grab defendant's arm, but could not get control of him. During their struggle, as Deputy Jaquith was holding defendant from behind, defendant grabbed the 40-ounce beer bottle off the table and threw it over his left shoulder at Deputy Jaquith's head. The bottle came "probably within an inch, maybe a little bit less" of hitting her in the head.

Defendant and Deputy Jaquith continued to struggle as he continued to mash the methamphetamine into the floor. As they were rolling around on the ground, amid the broken beer bottle glass and the methamphetamine, defendant was trying to punch Deputy Jaquith.

Ultimately, Deputy Seo told Deputy Jaquith to back up; he drew his gun, pointed it at defendant and told him to get on the ground. Defendant eventually complied with these orders and was arrested. A search of defendant's truck revealed 0.89 grams of methamphetamine.

Approximately one month later, on August 29, 2001, at 10:30 p.m., Sacramento County sheriff's deputies were dispatched to an apartment complex to apprehend defendant. The deputies lawfully entered the apartment and waited inside for defendant. When defendant knocked on the door, the deputies opened it to let him inside. Once defendant realized they were law enforcement officers, he attempted to fight, throwing punches at two of the deputies, and then to flee. Defendant was taken down by the deputies, but continued to resist arrest, kicking one of the deputies in the groin.

During the struggle to arrest defendant, he repeatedly reached into the waistband of his pants. Eventually, he removed two clear plastic bags, containing 29.66 grams of methamphetamine.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

Defendant next contends there was insufficient evidence supporting his conviction for possession of methamphetamine while armed with a loaded shotgun (Health & Saf. Code, § 11370.1, subd. (a)), as there is insufficient evidence he was "aware of the presence of the shotgun hidden under the pillow." We disagree. Defendant also challenges this conviction, claiming the trial court prejudicially "failed to instruct the jury regarding the critical element of knowledge." We are not persuaded that any errors were prejudicial.

Health and Safety Code section 11370.1, subdivision (a), provides, in pertinent part: "[E]very person who unlawfully possesses any amount of a substance containing . . . methamphetamine . . . while armed with a loaded, operable firearm is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years. [¶] As used in this subdivision, 'armed with' means having available for immediate offensive or defensive use."

### A. Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, we "draw all inferences in support of the verdict that reasonably can be deduced and must uphold the judgment if, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." (*People v. Estrella* (1995) 31 Cal.App.4th 716, 725 [37 Cal.Rptr.2d 383].) This standard of review is not altered where the People rely primarily on circumstantial evidence. (*People v. Bloyd* (1987) 43 Cal.3d 333, 346–347 [233 Cal.Rptr. 368, 729 P.2d 802].)

Defendant overstates the case when he characterizes the gun as "hidden." The shotgun was partially concealed by a pillow. However, the butt end of the gun and a clip with blue shotgun shells were immediately visible

---

*See footnote, *ante*, page 905.

and readily identifiable to Officer Edward Rosenbrook upon entering the room. Defendant was sitting on the same bed on which the shotgun was located. It is a reasonable inference from this evidence that defendant knew the shotgun was under the pillow. Accordingly, there was substantial evidence to support the finding that defendant knew the gun was under the pillow.[3]

## B. Element of Knowledge

Defendant also claims the instructions erroneously failed to advise the jury that he had to possess methamphetamine while *knowingly* armed with a firearm. On this point we agree with defendant. However, in the circumstances of this case, we find the error harmless.

We have found no published cases specifically addressing the knowledge requirement under Health and Safety Code section 11370.1, subdivision (a), nor has either party cited any. As previously noted, section 11370.1, subdivision (a), defines the term "armed with" as having a firearm "available for immediate offensive or defensive use." The statute does not mention knowledge of the firearm. However, the language of Health and Safety Code section 11370.1, subdivision (a) ("while *armed with* a loaded, operable firearm" [italics added]), is nearly identical to that of Penal Code section 12022, subdivision (c) ("personally *armed with* a firearm" [italics added]); accordingly, we use Penal Code section 12022 as an analytical guide.

Unlike Health and Safety Code section 11370.1, Penal Code section 12022 does not contain its own definition of "armed with." However, it is well settled under Penal Code section 12022 that "[a] defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997 [43 Cal.Rptr.2d 77, 898 P.2d 391].) The jury instructions for Penal Code section 12022 mirror this language, defining the term " 'armed with a firearm' [as] *knowingly* to carry a firearm [or have it available] for offensive or defensive use." (CALJIC Nos. 17.15 (1998 rev.) (6th ed. 1996), 17.16.1 (6th ed. 1996), italics added.)

Despite the nearly identical language of Health and Safety Code section 11370.1, the jury instruction for section 11370.1 (CALJIC No. 12.52 (6th ed. 1996)) does not give the same definition of "armed with." CALJIC No. 12.52 defines "armed with" as "having available for immediate offensive or defensive use." We can discern no reason for this omission of the knowledge requirement other than inadvertence and we urge the CALJIC committee to promulgate a new instruction including the knowledge requirement.

---

[3] Defendant also contends his conviction in count two under Penal Code section 12022, subdivision (c), is not supported by substantial evidence, relying again on the claim that there was insufficient evidence of his knowledge of the presence of the gun. The evidence detailed here also supports defendant's conviction under Penal Code section 12022, subdivision (c). We believe this discussion adequately addresses defendant's challenge, and will not address it again separately.

Having determined that the trial court erred in failing to instruct the jury that defendant had to *knowingly* have the firearm available for immediate offensive or defensive use, we turn now to the question of whether such an error was prejudicial. We conclude it was not.

■ The misdescription or omission of an element of an offense "ordinarily requires reversal of a conviction unless the error was harmless. But, if no rational jury could have found the missing element unproven, the error is harmless beyond a reasonable doubt and the conviction stands. (*Neder v. United States* (1999) 527 U.S. 1, 19 [144 L.Ed.2d 35, 53, 119 S.Ct. 1827]; accord, *People v. Flood* (1998) 18 Cal.4th 470, 506 [76 Cal.Rptr.2d 180, 957 P.2d 869].)" (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 416 [124 Cal.Rptr.2d 92].)

■ Here, in connection with the July 7 incident, defendant was charged with violating both Health and Safety Code section 11370.1, subdivision (a), and Penal Code section 12022, subdivision (c). The only firearm involved in the July 7 incident was the sawed-off shotgun under the pillow. With respect to the Penal Code section 12022 charge, the jury was properly instructed that "[t]he term 'armed with a firearm' means knowingly to carry a firearm or have it available for offensive or defensive use." (CALJIC No. 17.16.1.) The jury found defendant guilty on this count. Thus, the jury had to have found that defendant knew of the presence of the gun partially covered by the pillow. In light of this finding, no rational jury could have found that defendant was aware of the gun as to the Penal Code section 12022 charge, but not aware of the same gun in the same location on the Health and Safety Code section 11370.1 charge. Thus, in the specific circumstances of this case, we find the trial court's error—in failing to instruct the jury that knowledge of the gun's presence was an element of the Health and Safety Code section 11370.1 crime—was harmless.

### III–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 905.

## DISPOSITION

Defendant's conviction on count three, for violation of Health and Safety Code section 11377, subdivision (a), is reversed. The judgment is otherwise affirmed. The trial court shall prepare an amended abstract of judgment reflecting this disposition and shall forward a certified copy to the Department of Corrections.

Davis, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 15, 2004.