[No. A107676. First Dist., Div. Five. Nov. 28, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DARVIN HEATH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts II. and III. of this opinion are not certified for publication.

## COUNSEL

Irma Castillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SIMONS, J.—Health and Safety Code section 11370.1, subdivision (a) (hereafter section 11370.1(a)) provides, in pertinent part, "every person who unlawfully possesses any amount of a substance containing cocaine base, a substance containing cocaine, . . . a substance containing methamphetamine . . . *while armed with a loaded, operable firearm* is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years. [¶] As used in this subdivision, 'armed with' means having available for immediate offensive or defensive use." (Italics added.) In this appeal, Darvin Heath raises an issue of first impression: Is *knowledge* that the firearm is loaded and operable an element of this offense? We conclude it is not.

### BACKGROUND

About 9:00 p.m. on October 5, 2003, Pittsburg Police Officer Anthony Bustillos was on patrol when he saw a Toyota driving with no front or rear lights. Bustillos activated his patrol car's overhead lights and siren to effect a traffic stop, but the vehicle did not stop. Instead, the driver, appellant, stuck his arm out the window and made a waving motion, which Bustillos interpreted as a request that Bustillos pull alongside him. Eventually appellant pulled over and stopped. Bustillos exited his patrol car, drew his gun, approached appellant's vehicle, and ordered him to turn off his engine and

show his hands. Appellant responded by yelling something at Bustillos, and Bustillos again ordered him to show his hands. Appellant continued to duck in and out of the car and yelled something about being unable to stop his car. After four or five requests to show his hands, appellant finally put his hands up and was ordered out of the car.

At Bustillos's request, a backup officer searched the Toyota. Directly underneath the middle section of the driver's seat was a small .22-caliber revolver. Three bullets were in the gun's chamber. Appellant was handcuffed and transported to the police station. Inside the patrol car, appellant moved around trying to adjust his body position. After appellant was removed from the patrol car, Bustillos found a plastic baggie and a white powdery residue, later determined to be methamphetamine, scattered on the patrol car's seat where appellant had been seated. During the booking process, when appellant removed his shoes and socks, a small baggie, later determined to be cocaine base, fell near his foot.

Bustillos determined that the Toyota's registered owner was Charmaine Bailey and that the gun found in the car was operable. Bustillos opined that based on the location of the gun inside the car, the driver could have reached down and grabbed the gun. He also opined that the methamphetamine and cocaine found were usable amounts. A search of the car's trunk turned up letters addressed to appellant.

*The Defense*

Appellant was in a relationship with Bailey's daughter, Teresa Williams, and appellant, Bailey, Williams and Bailey's grandson all drove Bailey's car. Prior to the incident, appellant had driven the car three or four times. Bailey said the car had an alternator problem, which caused the lights to go on and off.

Williams testified that, in mid-September 2003, she found a firearm in her 15-year-old son's clothing at her grandfather's residence. Thereafter, she called her son and told him to get the gun out of the house. Her son complied, but Williams did not know what he did with it. Williams did not tell appellant there was a firearm in the car.

Appellant said that on the evening of his arrest he was in Concord and called Williams for a ride. After she and her friend picked him up, Williams told him that the Toyota had stalled out. Appellant later charged the battery, and to avoid draining the battery, he decided to drive the car with the lights off to his sister's house where he could park the car. He did not yield to Bustillos's lights and siren because he was trying to get the car to his destination, and tried to motion for Bustillos to pull alongside him so he could explain.

He denied ever seeing the gun found in the Toyota prior to his arrest, and did not know why mail addressed to him was found in the car. He conceded that his drugs were found in the car and that he tried to conceal some cocaine at the police station. He testified that he was previously convicted of burglary in 1985, auto theft in 1988, assault with a deadly weapon in 1990, and giving false information to a police officer in 2001.

The parties stipulated that Willliams told Bustillos that "[appellant] was aware that there was a gun in the [car] because [Williams] had told him that her son had purchased it and hidden it behind the radio in the front dashboard. Her son was no longer living with her and she had told [appellant] to get rid of the gun for her. She thought [appellant] had discarded the gun." The parties also stipulated that a defense investigator would testify that Williams told him that this statement to police was not true.

The jury convicted appellant of transportation of cocaine base (Health & Saf. Code, § 11352, subd. (a)) (count 1), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) (count 2), possession of a controlled substance (cocaine and methamphetamine) with a firearm (Health & Saf. Code, § 11370.1(a)) (count 3), and being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)) (count 4). In a bifurcated proceeding the court found true seven prior prison term allegations (Pen. Code, § 667.5, subd. (b)).

## DISCUSSION

### I. *Knowledge That a Firearm Is Loaded and Operable Is Not an Element of Section 11370.1(a)*

Section 11370.1(a) imposes a higher sentence for those who possess certain controlled substances if they are also "armed with a loaded, operable

firearm."[1] Appellant argues that due process compels us to construe this penal provision to impose a requirement that a defendant knew or should have known that the firearm possessed was loaded and operable, and his conviction must be reversed because the court did not so instruct the jury sua sponte. We disagree.

■ "[T]he requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element [of scienter] despite their failure expressly to state it. 'Generally, " '[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' . . . " [Citation.] In other words, there must be a union of act and wrongful intent, or criminal negligence. [Citations.] "So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication." [Citation.]' [Citation.]" (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 [98 Cal.Rptr.2d 466, 4 P.3d 297]; see also *People v. Simon* (1995) 9 Cal.4th 493, 521–522 [37 Cal.Rptr.2d 278, 886 P.2d 1271].)

However, California and federal courts have consistently held that due process does not require that factors that simply increase the penalty for already unlawful conduct be subject to a scienter requirement. In *People v. Meza* (1995) 38 Cal.App.4th 1741 [45 Cal.Rptr.2d 844], defendants convicted of possessing cocaine for sale and transporting cocaine challenged the jury's finding that the cocaine weighed over 20 kilograms. (*Id.* at p. 1744.) That finding mandated a 15-year enhancement of their sentences. The defendants argued, as appellant argues here, that due process imposed a sua sponte duty on the trial court to instruct the jury that it could not render a true finding on the enhancement unless it determined that the defendants knew the cocaine exceeded 20 kilograms. (*Id.* at p. 1747.) *Meza* rejected this argument, finding no scienter requirement: Our " 'construction of [the enhancement statute] does not criminalize otherwise innocent activity, since the statute incorporates [the underlying crime] which already contains a mens rea requirement . . . . In this respect, the . . . statute resembles other . . . criminal laws, which provide enhanced penalties . . . for obviously antisocial conduct upon proof of a fact of which the defendant need not be aware.' " (*Meza*, at p. 1748,

---

[1] Individuals convicted of simple possession of methamphetamine (Health & Saf. Code, § 11377) face a jail sentence of up to one year or a state prison sentence of 16 months, two or three years. Conviction of a violation of section 11370.1(a), however, leads to a state prison sentence of two, three or four years.

quoting *United States v. Falu* (2d Cir. 1985) 776 F.2d 46, 50; accord, *People v. Price* (1989) 210 Cal.App.3d 1183, 1192–1194 [259 Cal.Rptr. 282], overruled on other grounds in *Meza*, at p. 1748; *U.S. v. Klein* (9th Cir. 1988) 860 F.2d 1489, 1494–1495, overruled on other grounds in *U.S. v. Nordby* (9th Cir. 2000) 225 F.3d 1053, 1059; see *People v. Sargent* (1999) 19 Cal.4th 1206, 1222–1223 [81 Cal.Rptr.2d 835, 970 P.2d 409].) *Falu* upheld an increased penalty for distributing drugs within 1000 feet of a school, though there was no proof that the defendant knew the location of the school or its distance from the drug transaction. (Accord, *U.S. v. McDonald* (D.C. Cir. 1993) 301 U.S. App. D.C. 157 [991 F.2d 866, 870]; *U.S. v. Pitts* (9th Cir. 1990) 908 F.2d 458, 461; cf. *People v. Coria* (1999) 21 Cal.4th 868, 879–880 [89 Cal.Rptr.2d 650, 985 P.2d 970] [Rejecting a knowledge requirement for a statute that increases the penalty for otherwise unlawful conduct. "[B]ecause it is unlawful to distribute illicit drugs regardless of the amount or location, the accused, by participating in such an illegal transaction, assumes the risk of the enhanced penalties even absent knowledge of the facts bringing his conduct within the enhancement statutes. [Citation.] [¶] In contrast, 'where . . . dispensing with *mens rea* would require the defendant to have knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that [the Legislature] did not intend to eliminate a *mens rea* requirement.' [Citation.]"].)

Appellant contends that *Jorge M.* compels a different result. Appellant is wrong. *Jorge M.* considered a prosecution for possession of a semiautomatic weapon under the Assault Weapons Control Act (AWCA) (Pen. Code, § 12275 et seq.). The Legislature recognized that semiautomatic weapons had significant lawful uses and intended to ban only certain of these weapons. (*In re Jorge M., supra,* 23 Cal.4th at p. 875.) The Legislature described the proscribed firearms in a definitional section setting forth the pertinent characteristics. Our Supreme Court then imposed a scienter requirement regarding these characteristics in order to eliminate the "significant possibility innocent possessors would become subject to [the] weighty sanction[s]" imposed by the statute. (*Id.* at p. 887; *People v. Rubalcava* (2000) 23 Cal.4th 322, 331–332 [96 Cal.Rptr.2d 735, 1 P.3d 52] ["Because the dirk or dagger portion of [Penal Code] section 12020 criminalizes ' "traditionally lawful conduct," ' we construe the statute to contain a 'knowledge' element. [Citation.]"]; *People v. Coria, supra,* 21 Cal.4th at p. 880 [crime of manufacturing methamphetamine (Health & Saf. Code, § 11379.6) requires that the defendant knows the character of the substance being manufactured because chemical synthesis is traditionally lawful conduct].)

The *Jorge M.* analysis has been applied to impose a scienter requirement for possession of a silencer for firearms (Pen. Code, § 12520) in *People v. Westlund* (2001) 87 Cal.App.4th 652, 657–659 [104 Cal.Rptr.2d 712], and to possession of a cane sword (Pen. Code, § 12020, subd. (a)) in *People v. Taylor* (2001) 93 Cal.App.4th 933, 939–942 [114 Cal.Rptr.2d 23]. Despite appellant's contrary argument, the *Jorge M.* line of cases is perfectly consistent with the line drawn in *Meza* between statutes prohibiting otherwise innocent conduct, commonly construed to contain a knowledge requirement, and those statutes that increase the penalty for conduct already prohibited. Unlike the offenses at issue in *Coria, Rubalcava* and *Jorge M.*, section 11370.1(a) fits into this second category. It does not criminalize traditionally lawful conduct, but simply provides a more severe penalty for the unlawful possession of certain controlled substances by a person who is also armed with a loaded and operable firearm. Appellant's conviction required proof, inter alia, of his knowledge of the presence and nature of the controlled substances and the jury was so instructed.[2] Due process does not compel an additional scienter requirement for the factor triggering the penalty increase.[3]

Appellant next contends that the *Meza* analysis should be applied only to enhancements[4] that reflect *innocuous* conduct "which is not illegal in itself," such as being near a school or possessing more than a certain weight of a particular controlled substance. Appellant cites no authority that has articu-

---

[2] The jury was properly instructed, in relevant part, that to prove a violation of Health and Safety Code section 11370.1 the prosecution had to prove that a person exercised control over or the right to control a substance containing cocaine base or methamphetamine, and that person knew of its presence and its nature as a controlled substance.

[3] We note that in *People v. Harrison* (1969) 1 Cal.App.3d 115, 120 [81 Cal.Rptr. 396], the court held that knowledge the gun is loaded is not an element of the offense of carrying a loaded firearm in a vehicle (Pen. Code, § 12031, subd. (a)) because the statute does not expressly require it. In *Jorge M.*, the court mentioned *Harrison* without expressly approving or disapproving it. (*In re Jorge M., supra,* 23 Cal.4th at pp. 876–877.) *Jorge M.* did, however, undermine *Harrison*'s reasoning by imposing a scienter requirement even though the statute at issue did not. We specifically do not rely on *Harrison*'s reasoning in our case and, so, need not decide if we agree with it.

[4] To the extent appellant is asserting that *Meza* is inapplicable because section 11370.1(a) is a substantive offense and not an enhancement, we reject the assertion. Unlike a substantive offense that defines a crime, an enhancement imposes an added penalty when a particular crime is committed under specified circumstances. (3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 281, p. 371.) However, whether a particular statute defines a crime or creates an enhancement is often confusing (*id.* at pp. 371–372), and in this case is a distinction without a difference. Although it defines a substantive offense, section 11370.1(a) provides for increased penalties to punish a person's simultaneous possession of a controlled substance and a loaded and operable firearm.

lated such a distinction, and we question its wisdom. Why is possession of more than 20 kilograms of a controlled substance innocuous and not "illegal in itself"? Further, how would we apply the distinction to possession of a loaded and operable firearm, the conduct proscribed in section 11370.1(a)? The legality of this conduct is entirely dependent upon where it occurs, since, generally, persons may lawfully possess a loaded firearm in their homes, though not in a motor vehicle. Most significantly, appellant's proposed distinction ignores the rationale behind the line drawn in *Meza* and expressly recognized in *Coria*: refusing to imply a mens rea requirement does not violate due process when the challenged statute does not criminalize otherwise innocent activity because the challenged provision incorporates the underlying crime that already contains a mens rea requirement. This rationale applies regardless of the distinction urged by appellant.

 A defendant who knows he possesses certain controlled substances and a firearm[5] is properly held to assume the risk of the enhanced penalties under section 11370.1(a). In this case, to avoid violating section 11370.1(a), appellant could have ascertained that the gun with which he was "armed" was unloaded and/or inoperable. By failing to do so, he acted at his own risk and thereby committed the offense proscribed by section 11370.1(a). We conclude that knowledge that the firearm is loaded and operable is not an element of section 11370.1(a). Consequently, an instruction requiring such knowledge was unwarranted.[6]

II., III.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[5] In order to be convicted of this offense, a defendant must knowingly possess the firearm. (*People v. Singh* (2004) 119 Cal.App.4th 905 [14 Cal.Rptr.3d 769].) As appellant correctly notes, the trial court erred in failing to so instruct, but that error is harmless beyond a reasonable doubt based on the jury's conviction of appellant on count 4, felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)). (See *People v. Flood* (1998) 18 Cal.4th 470, 506 [76 Cal.Rptr.2d 180, 957 P.2d 869]; *Singh*, at p. 913.)

[6] In light of this conclusion, we need not address appellant's contention that there was no substantial evidence that he knew or should have known the gun in the car was loaded and operable.

[*] See footnote, *ante*, page 490.

## DISPOSITION

The matter is remanded with directions to the trial court to strike or impose the prior prison term enhancements. The judgment is otherwise affirmed.

Jones, P. J., and Stevens, J., concurred.

A petition for a rehearing was denied December 20, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 29, 2006, S140619.