Filed 6/23/22  P. v. Serrato CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO SERRATO,<br><br>    Defendant and Appellant. | B317235<br><br>(Kern County<br>Super. Ct. No.<br>BF174872) |

APPEAL from a judgment of the Superior Court of Kern County, Kenneth C. Twisselman II, Judge.  Affirmed in part and reversed in part.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Louis M. Vasquez, Supervising Deputy Attorney General, Lewis A. Martinez and Jennifer Oleska, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Alejandro Serrato (defendant) had several pounds of methamphetamine at his feet when a California Highway Patrol (CHP) officer stopped the vehicle in which he was riding as a passenger. Defendant and the driver were arrested, and a pistol was later found beneath the driver's seat. A jury found defendant guilty of two drug charges—with associated firearm enhancements found true, of possession of methamphetamine while armed with a firearm, and of receiving stolen property (the pistol). We are asked to decide whether substantial evidence supports (1) the firearm-related offense and enhancements and (2) defendant's conviction for receiving stolen property. The first issue principally turns on whether defendant knew the pistol was in the vehicle; the second turns on whether he knew the pistol was stolen.

## I. BACKGROUND

### A. *The Offense Conduct, as Established by the Evidence at Trial*

In December 2018, CHP officer Brian Paxson was on patrol with a narcotics-trained dog on northbound State Route 99 in Kern County. He stopped a four-door pickup truck with a non-functioning brake light and a license plate obscured by a discolored plastic cover. Angel Alfaro (Alfaro) was driving and defendant was in the front passenger seat.

Officer Paxson approached the vehicle on the passenger side. He asked Alfaro to exit the truck because it was "really loud" and he "felt like [he] was yelling." Alfaro did not have a driver's license and was "visibly shaking" when he gave Officer Paxson another form of identification. Alfaro said he and defendant were driving to "the store," but he could not say which

2

one. Defendant, who also lacked a driver's license, told Officer Paxson he and Alfaro were driving to a friend's house, but he could not provide the address. The truck was registered to someone other than Alfaro, albeit someone who shared his last name.

Officer Paxson planned to impound the truck and called for backup because he would not be able to drive defendant and Alfaro off the highway with a dog kennel in his patrol car. When backup officers arrived, defendant and Alfaro were directed to stand away from the truck as Officer Paxson had his dog sniff the exterior. Defendant and Alfaro "looked deflated" and spoke to one another in Spanish. The dog alerted to the front passenger door. Officer Paxson then allowed the dog inside the truck and it alerted to a pillowcase or sheet on the floorboard in front of the passenger seat where defendant's feet had been. Officer Paxson found five plastic containers inside the pillowcase or sheet, all of which were similar in size and weight. Officer Paxson suspected the containers held a "large quantity" of methamphetamine and arrested defendant and Alfaro.

Matthew Iturriria was one of two CHP officers who responded to Officer Paxson's call for assistance. He was tasked with filling out paperwork necessary to impound the truck. Officer Iturriria checked the center console, back seat, back floorboards, and glove compartment for valuables. He had a "quick glance" at the front floorboards looking from the direction of the back of the pickup's passenger cab, and nothing caught his eye.

About an hour later, however, tow truck driver Johnny Rincon (Rincon) who towed the truck away spotted a gun under the driver's seat when he was reviewing vehicle information on

the driver's door at his company's tow yard. Rincon informed his employer, Ray Tavakoli (Tavakoli), and Tavakoli had a dispatcher report the gun to CHP.

When Officer Iturriria arrived at the tow yard to retrieve the gun, Tavakoli saw that it was "right where the pedals are." Officer Iturriria "peeked under the seat with [his] flashlight" and saw the gun "far enough back to where it wasn't visible in plain view." As he put it (during later trial testimony), "You had to actually look, and it was tucked back a little bit." The gun's handle or grip was facing the passenger side. There were nine bullets in the gun: one in the chamber and eight more in the magazine.

Officer Iturriria determined the gun was in good working order based on a visual inspection and by "dry-firing it and ejecting a round out through the chamber." The gun's owner, Brian Murphy (Murphy), testified the gun—a "Springfield XD, subcompact" handgun with a 3.8 inch barrel that he identified by its serial number—had been stolen from his truck in Bakersfield some five months earlier, in July 2018. Murphy reported the theft to law enforcement and he testified he did not know defendant or Alfaro.

The Kern County Regional Crime Laboratory analyzed three of the five containers found in the truck and confirmed each held approximately one pound of methamphetamine. Kern County Sheriff's Office Deputy Raymond Seibert, who was assigned to a local drug task force in December 2018, testified the seized drugs were in "larger chunks" that did not appear to have been handled much, consistent with "what [he has] seen in investigations where [he] knew [drugs came] directly from Mexico." Deputy Seibert testified about the value of the seized

4

drugs in specific quantities, ranging from a common single dose of about 0.1 grams ($20) to the wholesale price per pound ($1,300). Extrapolating from the single dose price, Deputy Seibert estimated the total value of the drugs seized from the truck to be about $450,000.

Deputy Seibert also testified regarding factors relevant to determining whether a person possesses drugs for personal use or for sale. These include the quantity and the presence of drug paraphernalia, scales, and baggies. The significance of these factors varies depending on the circumstances: While a "lower-level dealer" may possess scales and baggies, a "higher-level dealer . . . may not have some of that stuff, especially if the narcotics [are] already pre-weighed out." Deputy Seibert also noted that he "encounter[s] [guns] very often in sales investigations" because dealers "[do not] want to be robbed." Deputy Seibert testified that "a pretty good amount," but not a majority, of guns seized in these circumstances are reported stolen: "[A] lot of times we will encounter a firearm that's registered to someone else, not the person we found it with, but we can't get ahold of that person to confirm if it was actually stolen or if they maybe somewhere down the line traded it for narcotics. Because that's fairly common as well, if the owner of that firearm was a narcotics user, or they simply don't know that it's even missing."

The prosecution posed a detailed hypothetical based on the facts of the case to Deputy Seibert, ultimately asking him whether five plastic containers each containing about one pound of methamphetamine in "large shards," found in a vehicle traveling northbound on State Route 99 with a gun under the driver's seat but no "drug paraphernalia or other indicia," would

be possessed for personal use or for sale. Deputy Seibert opined the drugs in this hypothetical would be possessed for sale based on the total quantity of methamphetamine, the fact that it was divided into equally-weighted parcels, the fact that it was heading "away from the border . . . where the money is at," and the presence of the gun indicating the vehicle's occupants saw themselves as "a target to be robbed."

## B.    *Verdict and Sentencing*

The Kern County District Attorney charged defendant and Alfaro in an information with four crimes: (1) transportation of methamphetamine for sale (Health & Saf. Code, § 11379, subd. (a)); (2) possession of methamphetamine for sale (Health & Saf. Code, § 11378); (3) possession of methamphetamine while armed with a loaded firearm (Health and Saf. Code, § 11370.1, subd. (a)); and (4) misdemeanor receiving stolen property (Pen. Code, § 496, subd. (a)). As to counts one and two, it was further alleged defendant and Alfaro, among other things, were personally armed with a firearm during the commission of the offenses (Pen. Code, § 12022, subd. (c)).

Following a joint trial, the jury found defendant guilty on all counts and found the special allegations to be true.[1] On the methamphetamine transportation conviction, the trial court imposed a split sentence of four years in local custody followed by four years of mandatory supervision. This was calculated as two years for violation of Health and Safety Code section 11379,

---

[1]     The jury also found Alfaro guilty on all counts and found the special allegations to be true. Only defendant's appeal is before us for decision.

6

subdivision (a), plus three years for the Penal Code section 12022, subdivision (c) firearm enhancement, plus three years for a drug quantity sentencing enhancement (Health & Saf. Code, § 11370.4, subd. (b)(1)).  The trial court stayed sentences on the remaining convictions pursuant to Penal Code section 654.

## II.  DISCUSSION

Defendant challenges the sufficiency of the evidence supporting the jury's true findings on the firearm enhancements attached to counts one and two (transportation and possession of methamphetamine for sale) and the guilty verdict on count three (possession of methamphetamine while armed with a loaded firearm).  He specifically argues there is no substantial evidence satisfying a necessary element of the conviction and enhancements, namely, that he knew there was a gun in the truck available for his use.  We reject the argument because the jury could reasonably find defendant would not have been willing to transport several pounds of methamphetamine without a gun for protection.  But we do agree with defendant that there is no proper evidentiary basis for the further inference that he knew the gun was stolen, which is a necessary element of his receiving stolen property conviction.  It is true that there need be only slight evidence to support an inference of guilty knowledge where a defendant is found to be in possession of recently stolen property, but there is no evidence defendant was involved in procuring the gun or had any information as to its provenance.

7

*A.     Substantial Evidence Supports the Jury's Finding*
*that Defendant Knew the Gun Was Available for His*
*Use*

To prove defendant's violation of Health and Safety Code section 11370.1 (count three) and the section 12022, subdivision (c) firearm enhancement alleged in connection with counts one and two, the prosecution was required to satisfy similar elements.

Health and Safety Code section 11370.1 provides, in part, that "every person who unlawfully possesses any amount of . . . a substance containing methamphetamine . . . while armed with a loaded, operable firearm is guilty of a felony . . . ."  (Health & Saf. Code, § 11370.1, subd. (a).)  The statute defines the phrase "armed with" to mean "having available for immediate offensive or defensive use."  (Health & Saf. Code, § 11370.1, subd. (a).)  Courts have construed this definition to require that a defendant know the gun is available for use.  (*People v. Mena* (2005) 133 Cal.App.4th 702, 706; *People v. Singh* (2004) 119 Cal.App.4th 905, 912-913 (*Singh*).)

Penal Code section 12022, subdivision (c) provides that "a person who is personally armed with a firearm in the commission of a violation or attempted violation" of, among other statutes, Health and Safety Code sections 11378 (count one) and 11379 (count two), "shall be punished by an additional and consecutive term of imprisonment . . . ."  (Pen. Code, § 12022, subd. (c).)  "Unlike Health and Safety Code section 11370.1, Penal Code section 12022 does not contain its own definition of 'armed with.'  However, it is well settled under Penal Code section 12022 that '[a] defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively.'"  (*Singh*,

8

*supra*, 119 Cal.App.4th at 912, quoting *People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*).) As with section 12022, subdivision (c), this formulation implies that the defendant's conduct must be knowing. (*Bland*, *supra*, at 997.)

As defendant acknowledges, the fact that the gun was found partially underneath Alfaro's seat does not preclude a finding that it was available for defendant's use. (*People v. Mendival* (1992) 2 Cal.App.4th 562, 575) [holding that where a gun is accessible to more than one person, the issue is "whether the position of the firearm rendered it available for offensive or defensive use to only one or both of the co-participants"].) Defendant does suggest in passing that "[t]here was no evidence as to whether the position of the firearm under the driver's seat would have put it within [his] reach," but the jury viewed photographs of the truck and Officer Iturriria testified the gun's handle was oriented toward the passenger side. This was sufficient to support the finding that the gun was available to defendant from the front passenger seat. (See *id.* at 568, 575 [the defendant driver of a vehicle was armed for purposes of Penal Code section 12022, subdivision (c) enhancement where a gun was found on the passenger-side floorboard].)

Defendant's primary contention is that there is no substantial evidence he knew the gun was in the truck. The jury was entitled, however, to infer that defendant knew about the gun based on the amount of methamphetamine recovered and Deputy Seibert's testimony that drug dealers frequently arm themselves to avoid robbery. Indeed, our Supreme Court has emphasized that "[d]rug dealers are known to keep guns to protect not only themselves, but also their drugs and drug proceeds; ready access to a gun is often crucial to a drug dealer's

9

commercial success." (*Bland*, *supra*, 10 Cal.4th at 1005.) The quantity of drugs recovered, defendant's observed communication with Alfaro after the police stop and while the dog sniff was underway, Deputy Seibert's testimony, and the position of the gun when located are, together, substantial evidence that defendant was aware the gun was available for his use while in the truck. (*See id.* at 995 [where the prosecution proves a charge of felony drug possession and a firearm is found in close proximity to the drugs in a place "frequented" by a defendant, the jury may reasonably infer the defendant knew of the firearm's presence].)

   B.    *There Is No Substantial Evidence Defendant Knew the Gun Was Stolen*

   Penal Code section 496, subdivision (a) provides, in pertinent part, that "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained," is guilty of a misdemeanor if the value of the property does not exceed $950. (Pen. Code, § 496, subd. (a).) "Thus, to sustain a conviction for receiving stolen property, the prosecution must prove (1) the property was stolen; (2) the defendant knew the property was stolen; and, (3) the defendant had possession of the stolen property. [Citations.]" (*People v. Land* (1994) 30 Cal.App.4th 220, 223; see also CALCRIM No. 1750.) Here, the fact that the gun was stolen is established by the testimony of its owner, Murphy. Accordingly, defendant's arguments focus on whether he possessed the gun and whether he knew it was stolen. We need address (apart from what we have already said) only the latter contention.

10

Because there was no evidence at trial that defendant personally stole the gun from Murphy's truck, his knowledge of its provenance had to be proved by circumstantial evidence. (*People v. Roland* (1969) 270 Cal.App.2d 639, 647 ["[K]nowledge of the theft of property need not be proved by direct evidence; circumstantial evidence is sufficient"].)  Citing Deputy Seibert's testimony that guns recovered in drug trafficking investigations are often stolen, the Attorney General contends it can be inferred "that a person who is clearly experienced in the transportation of illicit drugs, an activity which is associated with the carrying of firearms, would know that the firearm being carried for protection was stolen."  But Deputy Seibert also testified a majority of guns recovered in these circumstances are *not* reported stolen and many are traded for narcotics by their owners.

Another possible alternative basis for inferring that defendant knew the gun was stolen is the temporal proximity between the theft and his possession.  "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt."  (*People v. McFarland* (1962) 58 Cal.2d 748, 754 (*McFarland*).)  Defendant contends the interval between the gun's theft in July 2018 and his arrest in December of that year is too long for this inference to apply and, in any case, there is nothing to corroborate it.

"There is no question but that the phrase 'recently stolen' is a key portion of [this] legal principle . . . .  Catching a defendant with the goods in possession shortly after a theft rationally suggests a connection to and knowledge of the crime; while the

11

passage of a long period between the theft and the defendant's possession of the stolen property weakens any inference of guilty knowledge. [Citation.]" (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421 (*Anderson*).) Although courts have been reluctant "to attempt demarcation of any bright line between 'recent' and 'stale' time periods," the inference has been held to apply in cases involving time periods comparable to the five months at issue here. (*Id.* at 422 ["we believe it to have been well within reason for a jury to have determined that possession within four and a half months . . . of the theft should lead to an inference of knowledge of the stolen nature of the property"]; accord, *People v. Lopez* (1954) 126 Cal.App.2d 274, 278 [passage of nine months between theft and discovery "weakened the inference of defendant's guilty knowledge" because stolen property "could have passed through several hands after the thief had disposed of it," but inference still applied].)

Assuming the gun was "recently stolen" within the meaning of *McFarland*, none of the typical corroborating evidence is present in this case. The bench notes to CALCRIM No. 376 discuss potential indicia of knowledge of the status of recently stolen property.[2] These include "[f]alse, contradictory, or inconsistent statements"; "[t]he attributes of possession, e.g., the time, place, and manner of possession that tend to show guilt"; "[t]he opportunity to commit the crime"; "[t]he defendant's conduct or statements tending to show guilt, or the failure to explain possession of the property under circumstances that

---

[2] CALCRIM No. 376 was not given in this case. We refer to the instruction merely as a helpful catalog of factors to aid our analysis.

indicate a 'consciousness of guilt'"; "[f]light after arrest"; "[a]ssuming a false name and being unable to find the person from whom the defendant claimed to have received the property"; "[s]ale of property under a false name and at an inadequate price"; "[s]ale of property with identity marks removed . . . or removal of serial numbers"; "[m]odification of the property"; and "[a]ttempting to throw away the property."

In this case, the gun was not discovered at the moment of defendant's arrest and he made no statement (false, inconsistent, or otherwise) as to its provenance. (See, e.g., *People v. Champion* (1968) 265 Cal.App.2d 29, 32-33 [inference did not apply to a defendant who "fail[ed] to volunteer an explanation for his possession" of a stolen car because his arrest was unrelated to theft and "[t]he circumstances obviously did not call for him to explain his possession of the automobile"].) The attributes of possession (e.g., the time, place, and manner of possession) will support an inference of knowledge that property is stolen where there is "evidence of something unusual about the possession— something other than mere control of property which would be asserted by a legal owner" (*Anderson*, *supra*, 210 Cal.App.3d at 424), but here, the mere fact that the possession occurred while transporting methamphetamine is not enough; as already discussed, Deputy Seibert testified guns recovered in these circumstances often are not stolen.

None of the other examples of corroborating evidence listed in the bench notes to CALCRIM No. 376 are arguably present here. There was no evidence as to whether defendant had the opportunity to steal Murphy's gun because there was no evidence of defendant's whereabouts in July 2018. There is no indication that defendant fled before or after arrest or assumed a false

13

name; to the contrary, he was out of custody during his trial. There was no evidence defendant attempted to sell, modify, or discard the gun; Murphy was able to identify the gun by its serial number and did not testify that it had been altered in any way. And assuming concealment is analogous to disposal for purposes of the *McFarland* inference, there is no evidence that defendant (as opposed to Alfaro) hid the gun beneath the driver's seat.

Because the bare fact that defendant constructively possessed a gun that had been stolen five months earlier is insufficient to support the inference that defendant knew that gun was stolen, we shall reverse defendant's conviction for receiving stolen property. (*McFarland*, *supra*, 58 Cal.2d at 756.)

## DISPOSITION

Defendant's conviction for receiving stolen property is reversed. In all other respects, the judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

14