Filed 6/15/18

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SALVADOR SAAVEDRA,<br><br>    Defendant and Appellant. | F073923<br><br>(Super. Ct. No. F15907511)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, part III of the Discussion, and the Disposition are certified for publication.

## INTRODUCTION

Salvador Saavedra (defendant) stands convicted, following a jury trial, of committing forcible lewd acts on a child under age 14 (Pen. Code,[1] § 288, subd. (b)(1); counts 1 & 2), sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a); count 3), oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b); counts 4 & 11), forcible sodomy (§ 286, subd. (c)(2); count 5), forcible rape (§ 261, subd. (a)(2); count 6), aggravated sexual assault of a child (sodomy; § 269, subd. (a)(3); counts 7-9), and forcible oral copulation of a child under age 14 (§ 288a, subd. (c)(2)(B); count 10). As to counts 1, 5, 6, and 10, the jury found true a multiple victim allegation. (§ 667.61, subds. (a), (e)(4).) As to count 2, the jury found defendant personally used a firearm in commission of the offense. (§ 12022.53, subd. (b).) Defendant was sentenced to a total term of 18 years plus 180 years to life in prison, and ordered to pay various fees, fines, and assessments.

On appeal, defendant contends: (1) The evidence was insufficient to sustain his convictions on counts 1 and 11; (2) Trial counsel was ineffective for failing to object to admission of the complaining witnesses' out-of-court statements to a detective, and for requesting CALCRIM No. 207; (3) The giving of an instruction that consent is not a defense to duress (see *People v. Soto* (2011) 51 Cal.4th 229, 233 (*Soto*); cf. *People v. Cicero* (1984) 157 Cal.App.3d 465, 484-485 (*Cicero*), disapproved by *Soto*, *supra*, at p. 248 & fn. 12) violated due process; (4) The trial court erroneously instructed that the offense charged in count 11 was a general intent crime; and (5) The abstract of judgment must be corrected. In the published portion of this opinion, we reject defendant's due process claim, and conclude he was not prejudiced by the erroneous intent instruction. In the unpublished portion, we agree the abstract of judgment must be corrected, but otherwise reject defendant's remaining contentions. We also conclude a remand to

---

[1] All statutory references are to the Penal Code unless otherwise stated.

permit the trial court to determine whether to exercise its discretion to strike the firearm enhancement on count 2 is unwarranted.  Accordingly, we affirm the judgment.

# FACTS[*]

## I

### PROSECUTION EVIDENCE

R. was born in December 1999.  At some point, she made friends with G., who lived about a block away.  Defendant lived in a trailer near where they played.  Occasionally, R., G., and G.'s younger brother would go inside the trailer to watch cartoons on television.  Sometimes, while R. and G.'s brother watched television in the living room, G. and defendant were together in the bedroom.

The bedroom was separated from the rest of the trailer by a small door.  On one occasion when the door was open, R. saw G. and defendant on the bed.  G. was on the bottom and defendant was on top of her.  Defendant, who was naked, was moving up and down.

Sometime after this, defendant kissed R. on the lips.  This was the first thing she remembered him doing to her.  Although she told him to stop, he pulled down her pants, then took off his pants and touched her buttocks.  He rubbed Vaseline on both of them, then sodomized R.  R. was "[l]ike 10" when this happened.

On another occasion, defendant took R. by herself to help him paint a house.  Once there, he started kissing her on the lips.  He pulled down both their pants and sodomized her.  He told her not to tell, that she would get in trouble.  R. believed him and thought she had done something wrong.

On a third occasion, defendant took R. in his black truck to a place that sold plumbing supplies.  While they were in the front seat together, he penetrated her vagina with his hand.

---

[*]    See footnote, *ante*, page 1.

3.

Once, defendant told R. to lie facedown on the bed in the trailer and take off her pants. He then told G.'s brother, who was six or seven years old at the time, to take off his pants, get on top of R., and move. G.'s brother (who confirmed the incident at trial) obeyed. When the boy got off of R., defendant got on her and sodomized her.

Another time, R. and G. were in the trailer, watching television, when defendant put on a video and told the girls to kiss each other. He then had them orally copulate him. Once, when R.'s father was talking on the phone outside the trailer, defendant made R. sit on defendant's penis.

G. was born in August 1998. Her family began renting an apartment from defendant around 2006. They moved into the apartment when G. was eight years old. Defendant lived in a trailer at the four-apartment complex. G.'s family lived in the apartment for around three years, then moved to a different apartment that was not owned by defendant. In approximately 2012, they moved into a house they were purchasing from defendant.

While living in the apartment owned by defendant, G. would play outside with some of the other children who lived in the complex. Defendant sometimes invited G., her younger brother, and another child into the trailer to eat hot dogs and watch a movie. This was all that happened at first.

A few months after G. and her family moved into the apartment, G. was in the trailer when she needed to use the restroom. Inside the bathroom, which was small, were a toilet, sink with a counter, and a bath or shower. When G. finished and opened the bathroom door, defendant came in. He picked G. up and set her down on the counter by the sink, then began touching her breasts and genitals with his hand. He told G. not to say anything. G. did not tell anyone because she was scared.

The next incident took place a few weeks later. G. did not want to go back to the trailer, but she went anyway because defendant said she and her family were not born "here." Defendant said her brother would be left "here" because he was born "here," but that he (defendant) could do things to G.'s family because he had a lot of weapons in his trailer. G. saw a Taser, two or three guns, a bow and arrow, and a machete in the trailer. Some were shown to her by defendant.[2]

After the first incident, defendant would take G. to his room, have her remove her clothes, and play sexually explicit videos on the television in the bedroom. He would tell her "to do it" and would copy what was being done on the video.[3] Sometimes he orally copulated her or had her orally copulate him. Sometimes he digitally penetrated her anus or vagina. Sometimes he sodomized her. Sometimes he had sexual intercourse with her. The oral copulation, sodomy, and intercourse all started when G. was around eight years old. Sometimes G.'s little brother was in the trailer while this was going on. Sometimes R. was there.

Sometimes defendant took R. to the back room while G. remained in the front room with her brother, watching cartoons. When R. came back out, she acted like she wanted to get out of there. Defendant took both girls into the back room between five and 10 times. On those occasions, defendant told R. to take off her clothes, then he

---

[2] G. told Fresno Police Detective Bogard that the "scariest incident" occurred when she was in defendant's trailer. Defendant told her to remove her clothes and lie on the bed. He wanted to film her. When she refused, he showed her a long gun and said that if she did not do what he wanted, he would shoot and kill her and her family. Defendant let her hold the gun and asked her if she would prefer to be killed with the weapon or with his hands. G. said defendant held the camera with one hand and rubbed her naked body with the other.

[3] G.'s younger brother once looked into the back room. Defendant and G. were naked and doing the same thing as the people in the movie. Defendant once made G.'s brother touch his penis to G.'s vagina while both were naked and defendant was videotaping them.

touched her vagina. Sometimes he used his hands and sometimes his penis. Defendant did the same thing with G. Sometimes he told the girls to touch each other. He told them what to touch and how, and he told them to kiss each other.

On April 26, 2011, R. reported the abuse to her stepmother, who called the police the next morning. On May 31, 2011, R. underwent a forensic interview, during which she named G. as another of defendant's victims.[4]

Sometime after the forensic interview, Fresno Police Officer Lopez attempted to locate defendant. He was unable to make contact until September 1, 2011, when he found defendant at the trailer. At Lopez's request, defendant came to the police department the next day. He was not under arrest at the time. During the interview, defendant, who was born in 1951, denied R.'s allegations. He told Lopez that G. and her brother had been renting at the apartment complex, but now were living in a house he was renting or selling to them. As a result, Lopez was able to make contact with G.'s mother, then interview G. G. confirmed knowing R., but said defendant was like her grandfather and had not sexually assaulted her (G.). G. also denied seeing defendant touch R. G.'s brother also confirmed knowing R., but denied ever touching her or being touched in a bad way himself.[5] At that point, the investigation stalled due to a lack of evidence corroborating R.'s allegations.

The acts involving G. and defendant continued even after G.'s family moved to another apartment, because defendant and G.'s father were friends. Defendant would

---

**4** A video recording of the interview was played for the jury.

**5** According to G., she was expecting the visit from the police, because defendant had told her the police were going to talk to her. He told her to say she did not know anything. She did as he said, because he told her that he could hurt her family and that her family was going to get in a lot of trouble. The police also talked to G.'s brother, who also denied anything had happened. He did not tell them the truth, because defendant had told G. and him that he would take the house away and put them on the streets.

6.

offer to take the children out to eat but then would take them to his trailer. After G. and her family moved to the house, defendant would jump the fence late at night and knock on the window of the room G. shared with her sister. He would then have intercourse with G. Defendant also had intercourse with G. in a room in G.'s house that had two couches. Some of his ejaculate got on the carpet.[6] On some occasions, defendant picked G. up on her way to school and took her to his house or the trailer. Once, he sodomized her at that house, then took her back to school.

The last time defendant inappropriately touched G. was the Saturday before the police were called. G.'s parents took her brother to a soccer game that day. G. did not go with them, because if she did not stay home, defendant got angry. Defendant took G. into G.'s brother's room. He pulled her pants down, then bent her over and had intercourse with her from behind, despite the fact she was moving around and told him she did not want to. He got mad and said it was taking too long. When they heard G.'s mother arrive home, defendant grabbed his belt and the cord on which he would hang his phone and glasses. He told G.'s mother that G. had taken them into her brother's room and he had had to chase her. G. did not say anything, because she was afraid her mother would get angry about defendant being in the house when the mother was not there.[7]

---

[6]    Two separate semen stains subsequently were found on a piece of carpet law enforcement seized from the house. Defendant's DNA was found in one of the stains.

[7]    According to G.'s mother, defendant's zipper was down. When she got upset and asked what he was doing in the room, he said he had gone to the restroom and had not zipped up. G.'s mother began to yell at him, whereupon defendant told her to hit him. G. was crying and putting her blouse down. She told her mother nothing was happening. At some point, G.'s mother found a letter in G.'s room that defendant wrote to G., explaining what G. was supposed to tell her mother and saying they were going to lose the home.

In November 2014, G.'s father received a telephone call from defendant around 10:00 p.m. Defendant related that G. was outside of the house.[8] G.'s father was surprised, because he did not know defendant was going to be close to the house at that hour and he thought G. was inside the house. Defendant said G. was talking with a male at the corner. Defendant sounded jealous and nervous.[9] G.'s father went to get G., but did not reach the corner because defendant was pulling her by the arm toward the house.

G., her father, and defendant returned to the house. Defendant was nervous and asked for some wine. He then went out to smoke a cigarette. G. and her father talked about her not having permission to have a boyfriend. She said the person to whom she had been talking was not her boyfriend, then revealed defendant had abused her. Shocked, her father asked her to tell him the truth. When G. confirmed it was true, her father called the police.

Fresno Police Officer Archan was dispatched to the call at approximately 10:20 p.m. on November 12, 2014. Defendant, who was sitting on the sofa, denied any wrongdoing.

Defendant led Archan and his partner, Officer Price, to his home and gave them permission to search for firearms. When they entered the house, Archan noticed a tripod with a camera facing the bed in the corner of the living room. Price turned on the camera and told Archan that he saw images of females. When defendant saw Price turn on the

---

[8]     According to G., defendant told her that he was going to take her, tie her up, and do things to her, and that she was going to regret everything. When she panicked, defendant telephoned her father.

[9]     Prior to this time, G.'s father had noticed defendant was always around the house. Sometimes, G.'s father saw defendant's car parked in the middle of the street close to G.'s school. Defendant said he was looking for a place to rent. Sometimes defendant would telephone G.'s father and ask if they were going to go out and, if so, if they were going to take the children.

camera, he recanted his consent for the officers to look for firearms and told them to leave his home.

A search warrant was executed at defendant's house on November 19, 2014. Among the items seized were a number of video cassette tapes. No evidence of children being molested was found on the tapes.

## II

### DEFENSE EVIDENCE

Defendant testified that he originally lived in Watsonville with his wife and children. In around 2006, he began spending about half of each month in Fresno, in order to manage a fourplex he had purchased. While in Fresno, he lived in a trailer at the location of those apartments. Children and adults often visited his trailer. He allowed the children to watch cartoons. Defendant denied any sexual misconduct with any of the children.

G. sometimes drove defendant's car to school. G. gave defendant orders. Defendant followed her orders because G. made threats about her friend being friends with the Michoacán Mafia, and how they would get him if he did not do what she told him to do. Defendant denied having any kind of sexual relationship with G. His DNA was found on the carpet at her home because one day, she called him and asked him to bring her some food. She then masturbated him.[10] She did this because defendant wanted to go to Ensenada, and G. said she would do whatever she had to in order to keep him from going. She wanted him to buy her a Hummer vehicle. Defendant denied having sexual contact with G. at any other time, having sexual contact with R., or directing G.'s brother to do anything sexual. He believed R. was accusing him because G. always bossed R. in everything. He believed G. was accusing him because she wanted

---

**10** When interviewed by police, defendant said nothing about the masturbation episode, but instead denied that there was any sexual contact. To him, the masturbation was not sexual contact because he did not do anything to G.

9.

to drink and drive, and he wanted to stop what he saw as a public threat. He was there the night G. snuck out of her house, because he had been told by a neighbor that she was sneaking out at night. Defendant wanted to have proof G. was not sneaking out to see him but another person.

Defendant denied ever having weapons in his trailer. There was a machete, but it was one of the things people sometimes left when moving out. Defendant would keep these things in case the people came back to get them.

## DISCUSSION

### I[*]

### SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to sustain his convictions on counts 1 and 11. The applicable legal principles are settled. The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; accord, *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) Substantial evidence is evidence that is "reasonable, credible, and of solid value." (*People v. Johnson*, *supra*, at p. 578.) An appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.) An appellate court must not reweigh the evidence (*People v. Culver* (1973) 10 Cal.3d 542, 548), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367). Moreover, the inquiry "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.]" (*Jackson v. Virginia*,

_____

\* See footnote, *ante*, page 1.

10.

*supra*, at pp. 318-319.) "If the circumstances reasonably justify the [trier of fact's] findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.]" (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) Instead, reversal is warranted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Reviewing the evidence adduced at trial in accord with the foregoing principles, we conclude substantial evidence supports both challenged convictions.

## A.     Count 1

In count 1, defendant was convicted of committing a violation of section 288, subdivision (b)(1) against G. In her argument to the jury, the prosecutor elected the first incident G. could remember — the one that took place in the bathroom of defendant's trailer — as the basis for this charge. As set out in the statement of facts, *ante*, G. testified that when she finished using the small bathroom in defendant's trailer, she opened the door. Defendant entered, picked G. up and set her down on the counter by the sink, and began touching her breasts and genitals. She was able to leave the bathroom because defendant let her out. There was evidence G. was around eight years old at the time. The prosecutor argued defendant used physical force when he picked G. up and put her on the counter and then forcibly touched her.

The elements of a violation of section 288, subdivision (b)(1) "are (1) physical touching of a child under age 14; (2) for the present and immediate purpose of sexually arousing or gratifying the defendant or victim; and (3) the touching was accomplished by use of force, violence, duress, menace, or fear of injury. [Citation.]" (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1207.) Defendant claims the evidence failed to establish the third element.

The longstanding formulation of force enunciated in *Cicero*, *supra*, 157 Cal.App.3d at page 474 — "physical force substantially different from or substantially

11.

greater than that necessary to accomplish the lewd act itself" — "remains . . . an appropriate definition . . . ." (*Soto*, *supra*, 51 Cal.4th at p. 242; accord, *People v. Griffin* (2004) 33 Cal.4th 1015, 1027.) Whether a defendant's conduct satisfied the definition is an issue for the jury to resolve (*People v. Babcock* (1993) 14 Cal.App.4th 383, 388); in reviewing the jury's determination, we must be mindful that each case must be decided on its own facts (*People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1381).

Here, defendant physically picked G. up and set her down on the counter. She was able to leave the bathroom only when defendant let her out. Under the circumstances, defendant's conduct involved the application of physical force substantially different from and substantially greater than that necessary to accomplish the lewd act of touching G.'s breasts and crotch. (See, e.g., *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004-1005; *People v. Gilbert*, *supra*, 5 Cal.App.4th at p. 1381; *Cicero*, *supra*, 157 Cal.App.3d at pp. 470, 474.) The force facilitated the lewd act rather than being merely incidental to it. (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1024.) Substantial evidence supports the conviction on count 1.[11]

**B.     Count 11**

In count 11, defendant was convicted of committing a violation of section 288.7, subdivision (b) against R. In her argument to the jury, the prosecutor elected the incident in the truck, in which R. testified defendant penetrated her vagina with his hand, as the basis for this count.

The elements of a violation of section 288.7, subdivision (b) "are: (1) The defendant engaged in an act of oral copulation [or sexual penetration] with the victim; (2) when the defendant did so, the victim was 10 years of age or younger; and (3) at the time of the act, the defendant was at least 18 years old. [Citation.]" (*People v. Mendoza*

---

[11]     Because we find sufficient evidence of force, we need not decide whether the evidence also supports a finding of violence, duress, menace, or fear of injury. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)

(2015) 240 Cal.App.4th 72, 79-80.) Stated another way, the victim must have been under 11 years of age, i.e., he or she must not have reached his or her 11th birthday. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265-1266, 1275.) Defendant contends the evidence is insufficient to prove the incident in the truck took place before R.'s 11th birthday.

R. turned 10 years old in December 2009, and first reported the abuse to police in April 2011, when she was 11 years old. At trial, R. testified she was "[l]ike 10" the first time defendant ever touched her, and "[p]robably 11" at the time of the incident in the vehicle. During the forensic interview, R. said she was 11 the first time defendant did something to her, and she was still 11 at the time of the interview. She also said she was 10 years old and in fifth grade the last time something happened. The first time, she had just come out of fifth grade. At the time of the interview, which was conducted on May 31, 2011, she was repeating fifth grade. R. told Bogard in 2014 that the acts occurred when she was between the ages of 10 and 12.

According to R.'s stepmother, R. and her father moved in with the stepmother somewhere around 2010. According to G.'s father, G.'s family lived in the apartment where defendant kept his trailer from 2006 to approximately 2009. A comparison of their birthdates shows G. was approximately 16 months older than R.

Defendant testified G. was around eight years old when she first started coming around his trailer. He did not recall when R. started coming around; "just suddenly [she] appeared there as well." He thought she was around seven or eight years old. She came with G. When G.'s family moved out of the apartment, G. no longer visited defendant at the trailer until they moved into another of his properties. After G. and her family moved out of the original apartment, R. no longer came to visit him.

Evidence R. had not yet turned 11 at the time of the incident charged in count 11 is not strong. In order for us to conclude the evidence was legally sufficient, however, it need not be strong. (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) While mere speculation cannot support a conviction (*People v. Marshall* (1997) 15 Cal.4th 1, 35), we

13.

believe jurors reasonably could have resolved the evidentiary inconsistencies to conclude the incident in the truck took place before R.'s 11th birthday in December 2010. " 'It is blackletter law that any conflict or contradiction in the evidence, or any inconsistency in the testimony of witnesses must be resolved by the trier of fact who is the sole judge of the credibility of the witnesses. . . .' [Citations.] It also is true that uncertainties or discrepancies in witnesses' testimony raise only evidentiary issues that are for the jury to resolve. [Citation.]" (*People v. Watts* (1999) 76 Cal.App.4th 1250, 1258-1259; see, e.g., *People v. Cantrell* (1992) 7 Cal.App.4th 523, 537-538.)

"That the evidence might lead to a different verdict does not warrant a conclusion that the evidence supporting the verdict is insubstantial. [Citation.]" (*People v. Holt* (1997) 15 Cal.4th 619, 669.) Defendant's challenge to the sufficiency of the evidence as to count 11 fails.

## II*

### INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends his trial attorney's performance was prejudicially deficient because counsel (1) failed to object to the admission of Bogard's testimony concerning what G. and R. told him, and (2) requested that the court give CALCRIM No. 207. We find no cause for reversal.

The burden of proving ineffective assistance of counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's

---

\* See footnote, *ante*, page 1.

14.

shortcomings. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687-694.) A defendant must establish both prongs in order to prevail on a claim of ineffective assistance of counsel; if a defendant makes an insufficient showing as to either component, we need not address the other. (*Strickland v. Washington*, *supra*, at p. 697; *People v. Hinds* (2003) 108 Cal.App.4th 897, 901.)

"If the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 367.) In other words, "in assessing a Sixth Amendment attack on trial counsel's adequacy mounted on *direct appeal*, competency is *presumed* unless the record *affirmatively* excludes a rational basis for the trial attorney's choice. [Citations.]" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.)

## A.    Failure to Object to Admission of Bogard's Testimony

Bogard testified to what G. and R. told him when he interviewed them in 2014. Although some of their statements to him were inconsistent, in varying degrees, with their testimony at trial and R.'s statements in her forensic interview, the bulk of their statements were consistent with their trial testimony. Defendant says defense counsel should have objected, on grounds of inadmissible hearsay, at least to the consistent portions of Bogard's interviews with the girls, and counsel's failure to do so permitted the prosecution to repeat the evidence in such a way as to reinforce the girls' credibility. Defendant claims the error requires reversal of his convictions on all counts.

Defendant is correct that much of Bogard's testimony about what G. and R. told him was hearsay (Evid. Code, § 1200, subd. (a)) that, while perhaps relevant to their credibility, as asserted by the Attorney General, does not appear to have fallen within an

15.

exception to hearsay's general rule of inadmissibility (*id*., subd. (b); see, e.g., Evid. Code, §§ 1236, 1360; but see *id*., § 1235). Defendant is also correct that defense counsel's failure to object thereto forfeited any claim on appeal that Bogard's testimony was inadmissible hearsay. (*People v. Alexander* (2010) 49 Cal.4th 846, 908.)

Nevertheless, "a mere failure to object to evidence seldom establishes counsel's incompetence. [Citation.]" (*People v. Malone* (1988) 47 Cal.3d 1, 33.) We need not decide whether counsel could have raised a successful objection in the present case, since it is readily apparent he had a tactical reason for wanting Bogard to testify.[12] Although counsel was never asked to reveal his tactic, we can surmise, from portions of his cross-examination, that counsel sought to use some of the girls' statements to Bogard — even if they were consistent with trial testimony — to undermine their credibility.

In any event, the record on appeal does not allow us to say counsel could have had no reasonable tactical purpose, or satisfactory explanation, for his failure to object. Accordingly, defendant's claim fails. (See *People v. Bell* (1989) 49 Cal.3d 502, 546 (plur. opn. of Eagleson, J.).)

**B.      Request for CALCRIM No. 207**

Both parties requested that the court give CALCRIM No. 207. Accordingly, the trial court subsequently instructed, without objection: "It is alleged that the crimes occurred on or about certain dates or ranges of dates. The People are not required to prove the crime took place exactly on that date or that range of dates, but only that it happened reasonably close to that date or range of dates."

---

**12**     Defense counsel moved, in limine, to exclude Bogard's hearsay testimony only with respect to a pretext telephone call between one of the victims and defendant. Significantly, during a discussion of scheduling issues, the prosecutor stated she would be calling Bogard the next day. Asked about defense witnesses, defense counsel responded: "I'm glad we're talking about this right now. I was going to call Bogard. If she's calling Bogard that will be done."

16.

Defendant claims it was error to give the instruction, since the victims' ages were essential elements of all but two of the offenses of which defendant was convicted. By logical extension, he argues, that made the date on which each offense occurred an essential element as well. He says that since trial counsel's request for the instruction forfeited any claim of instructional error (see *People v. Wader* (1993) 5 Cal.4th 610, 657-658), counsel's request constituted ineffective assistance and prejudiced defendant with respect to the conviction on count 11.[13]

Assuming trial counsel could have had no reasonable tactical purpose for requesting CALCRIM No. 207 (or at least requesting it without also asking that it be modified so as not to include the counts in which the victims' ages were elements of the charged offense), we find no reasonable probability defendant would have obtained a more favorable result on count 11 had counsel refrained from requesting CALCRIM No. 207. (See *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008-1009.) The trial court prefaced its instructions by telling jurors that the instructions would address various areas: first, jurors' roles and responsibilities, and guides for considering evidence, and then there would be specific instructions on the elements of the charged offenses and any lesser included offenses and enhancements. CALCRIM No. 207 was included in the first portion, immediately following instructions on the use of jurors' notes and the interpretation of testimony and documentary evidence given in Spanish, and immediately preceding instructions about references to persons by their first names only and the presumption of innocence.

---

**13** Defendant concedes the purported error probably had little impact on most of the offenses, particularly those that required the victim to be under the age of 14. He argues CALCRIM No. 207 was important with respect to count 11, however, because the charged date range for the offense "pushed right up against" the day R. turned 11, and there was a legitimate question whether R. was under 11 years old when the incident in the truck occurred.

Instructions on the elements of the various charges followed a number of similar general instructions.  The court went through the first three counts in order, then gave CALCRIM No. 1128, in pertinent part, as follows:

"The following instruction applies to Counts 4 and 11:  The defendant is charged in Counts 4 and 11 with engaging in oral copulation or sexual penetration of a child ten years of age or younger in violation of Penal Code Section 288.7(b).  Count 4 pertains to [G.] and Count 11 pertains to [R.]  To prove that the defendant is guilty of this crime as alleged in Count 4 the People must prove that, one, the defendant engaged in an act of oral copulation with [G.]; two, when the defendant did so [G.] was ten years of age or younger; three, at the time of the act the defendant was at least 18 years old.

"Under the law a person becomes one year older as soon as the first minute of his or her birthday has begun.  [¶] . . . [¶]

"To prove that the defendant is guilty of this crime as alleged in Count 11 the People must prove that, one, the defendant engaged in an act of sexual penetration with [R.]; two, when the defendant did so [R.] was ten years of age or younger; three, at the time of the act the defendant was at least 18 years old."

The prosecutor subsequently reviewed for the jury the elements of count 4.  In part, she stated:  "When the defendant did so [G.] was ten years of age or younger, which means it wasn't 12:01 on the night of her, on the date of her 11th birthday . . . ."  With respect to count 11, the prosecutor reiterated:  "The defendant engaged in an act of sexual penetration with [R.]  When he did so[,] [R.] was ten years of age or younger and he was at least 18."

As given, CALCRIM No. 1128 correctly stated the age element of the offense charged in count 11, and defendant does not now contend otherwise.  Standing alone, CALCRIM No. 207 also correctly stated the law.  (§ 955; *People v. Richardson* (2008) 43 Cal.4th 959, 1027.)  Thus, jurors were not confronted with a situation in which they were given plainly conflicting instructions, one of which was erroneous on its face.  (Cf. *People v. Ngo* (2014) 225 Cal.App.4th 126, 153.)  Nor did the giving of CALCRIM

18.

No. 207 relieve the jury from having to find the age element of section 288.7, subdivision (b). Rather, at most the instructions raised a potential ambiguity or technical inconsistency. (See *People v. Hardy* (1992) 2 Cal.4th 86, 186 [instructions that testimony of one witness was sufficient for proof of any fact and that accomplice testimony required corroboration raised "technical inconsistency"].)

"Jurors are presumed to be intelligent persons capable of understanding and correlating jury instructions. [Citation.]" (*People v. Brock* (2006) 143 Cal.App.4th 1266, 1277; accord, *People v. Gonzales* (2011) 51 Cal.4th 894, 940.) A reasonable juror — which we presume defendant's trial jurors were — would have recognized that CALCRIM No. 207 set out the general rule that the People were not required to prove the crimes took place exactly on the dates alleged, while CALCRIM No. 1128 stated an exception, in that, for count 11, the People had to prove R. was 10 years of age or younger, whatever the date on which the offense occurred. (See *People v. Hardy*, *supra*, 2 Cal.4th at pp. 186-187.) This is particularly true in light of the prosecutor's argument with respect to counts 4 and 11. Accordingly, assuming deficient performance by trial counsel, defendant has failed to establish he was prejudiced thereby.

## III

### PURPORTED ERRORS IN JURY INSTRUCTIONS

A.     **Consent as a Defense to Section 288, Subdivision (b)(1)**

In *Soto*, *supra*, 51 Cal.4th at pages 233, 238, and 248, the California Supreme Court held that consent of the victim is not a defense to the crime of aggravated lewd conduct on a child under age 14, as proscribed by section 288, subdivision (b)(1).[14] With respect to counts 1 and 2, the trial court here gave CALCRIM No. 1111 in pertinent part as follows:

---

**14**     What was originally subdivision (b) of section 288 became subdivision (b)(1) of the statute in 1996. (Stats. 1995, ch. 890, § 1.) We refer to subdivisions (b) and (b)(1) interchangeably.

19.

"The defendant is charged in Counts 1 and 2 with a lewd or lascivious act by force or by fear on a child under the age of 14, specifically [G.], in violation of Penal Code Section 288(b)(1). To prove that the defendant is guilty of this crime the People must prove that, one, the defendant willfully touched any part of a child's body either on the bare skin or through the clothing . . . . Two, in committing the act the defendant used force, violence, duress, menace or fear of unlawful immediate injury to the child or to someone else. Three, the defendant committed the act with the intent of arousing, appealing to or gratifying the lusts, passions or sexual desires of himself or the child. And four, the child was under the age of 14 at the time of the act. [¶] . . . [¶]

"The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself.

"Duress means the use of direct or implied threat of force, violence, danger, hardship or retribution sufficient to cause a reasonable person to do or submit to something that he or she would not otherwise do or submit to. In deciding whether the act was accomplished by duress consider all the circumstances including the age of the child and her relationship to the defendant. [¶] . . . [¶]

"*It is not a defense that the child may have consented to the act.*" (Italics added.)

Defendant contends it was error to give the emphasized portion of the instruction. He asserts that at the time he allegedly committed the lewd acts, the state of the law was such that consent indeed was a defense to the element of force or duress; the law did not change in this regard, and the defense of consent did not become unavailable, until 2011, when the California Supreme Court decided *Soto*. Defendant argues: "Since *Soto* had the effect of expanding criminal liability under . . . section 288, subdivision (b) and since this expansion occurred after [defendant] committed the alleged crimes, the [emphasized] language in CALCRIM No. 1111 violated [defendant's] right to due process." Defendant implicitly concedes his conviction on count 2, with respect to which the jury found he personally used a firearm, was not affected, but he contends his conviction on count 1 must be reversed, because the question whether he used force to commit the charged act and whether G. consented to the act was a close one.

20.

We conclude defendant's due process rights were not violated by the giving of the challenged portion of CALCRIM No. 1111. The jury was properly instructed — even with respect to aggravated lewd acts alleged to have occurred before *Soto* was decided — that the child's consent was not a defense.

The due process clause "bars retroactive application of a judicial construction of a criminal statute that is unexpected and indefensible by reference to the law expressed before the conduct in issue." (*People v. Crew* (2003) 31 Cal.4th 822, 853; see *Bouie v. City of Columbia* (1964) 378 U.S. 347, 352-355.) "[R]etroactive application turns on whether the change effects 'an unforeseeable judicial enlargement of a criminal statute' [citation] and whether defendant had 'fair warning that . . . contemplated conduct constitutes a crime. [Citation.]" (*People v. Martinez* (1999) 20 Cal.4th 225, 239.)

As support for his claim of retroactive application in the present case, defendant points to *Cicero*, *supra*, 157 Cal.App.3d 465. The *Cicero* court observed: "The original language of section 288, subdivision (b), as added by the Legislature in 1979, provided: 'Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, and *against the will of the victim*, shall be guilty of a felony . . . .' (Stats. 1979, ch. 944, § 6.5, p. 3254, italics added.) In a 1981 amendment, the Legislature deleted 'and against the will of the victim' from the statute. (Stats. 1981, ch. 1064, § 1, p. 4093.)" (*Id*. at p. 476.)

The appellate court undertook a lengthy review of legislative history and a number of authorities, and stated: "From this analysis we conclude the Legislature did not intend to eliminate from subdivision (b) the requirement that a lewd act be undertaken against the will of the victim where the victim suffers no physical harm. [¶] But if the Legislature did not intend to amputate 'against the will of the victim' for all purposes from subdivision (b), what was the purpose of the 1981 amendment? We believe it was to make clear that the prosecution need not prove resistance by the minor in order to prove an act was committed 'by use of force' and against the will of the victim under

21.

subdivision (b)." (*Cicero*, *supra*, 157 Cal.App.3d at p. 480.)  The court went on to say: "Our conclusion means that, while the prosecution need not prove resistance, if the victim suffered no physical harm the prosecution must still show that the lewd act was undertaken against the will of the victim." (*Id*. at p. 481.)  The court found its conclusion "necessarily implie[d] that, where no physical harm is caused the victim, *it is an affirmative defense to a charged violation of subdivision (b) 'by use of force' that the act was not, in fact, undertaken against the will of the victim but was rather undertaken with knowing consent.*  [Citations.]" (*Id*. at p. 482, italics added.)

The court summarized the rules applicable to a violation of section 288, subdivision (b), as follows:  "Where a defendant uses physical force to commit a lewd act upon a child under the age of 14, and the child suffers physical harm as a consequence, the defendant has committed a lewd act 'by use of force' under subdivision (b).  Consent is no defense.  Where no physical harm to the child has occurred, the prosecution has the burden of proving (1) that the defendant used physical force substantially different from or substantially in excess of that required for the lewd act and (2) that the lewd act was accomplished against the will of the victim.  The prosecution may satisfy its burden on the latter issue by proving the physical force was such as would reasonably demonstrate that the lewd act was undertaken against the will of the victim under all circumstances, including the ages and sizes of the defendant and the victim.  The prosecution need not prove that the victim resisted the lewd act.  *Where no physical harm to the victim has occurred, it is an affirmative defense that the victim knowingly consented to the lewd act.*" (*Cicero*, *supra*, 157 Cal.App.3d at pp. 484-485, italics added.)

*Cicero* was followed, to varying degrees and often with little analysis, by a number of subsequent appellate opinions.  (E.g., *People v. Cochran* (2002) 103 Cal.App.4th 8, 15-16; *People v. Bolander* (1994) 23 Cal.App.4th 155, 160-161; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1787; *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1249-1251; *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1158; *People v. Mendibles*

22.

(1988) 199 Cal.App.3d 1277, 1306; *People v. Lusk* (1985) 170 Cal.App.3d 764, 770-771; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51.)  In *Soto*, the California Supreme Court disapproved all of them, including *Cicero*, to the extent statements contained therein suggested consent of the victim was a defense to a charge of violating subdivision (b)(1) of section 288.  (*Soto*, *supra*, 51 Cal.4th at p. 248 & fn. 12.)

Defendant's claim that *Cicero* controlled until abrogated by *Soto* is belied by *Soto* itself, wherein the state Supreme Court declared:  "Lack of consent by the child victim is not an element of either lewd act offense defined in section 288.  Nor is willingness by the child a defense to either crime.  *For over 100 years, California law has consistently provided that children under age 14 cannot give valid legal consent to sexual acts with adults*.  [Citation.]  The Legislature has drafted the child molestation laws to make issues regarding the child victim's consent immaterial *as a matter of law* in these cases."  (*Soto*, *supra*, 51 Cal.4th at p. 238, first italics added.)

With respect to *Cicero* and its progeny, the California Supreme Court observed:  "Despite the removal of the phrase 'against the will of the victim' from section 288(b), some courts continued to recognize consent as a defense to an aggravated lewd acts charge because they reasoned consent was inconsistent with the use of force and duress. . . .  The *Cicero* majority's faulty reasoning caused it to interpret section 288(b) as meaning precisely the *opposite* of what the Legislature intended."  (*Soto*, *supra*, 51 Cal.4th at p. 241.)  *Soto* noted that *Cicero* based its conclusion that consent is a defense "on a flawed analogy between lewd acts on a child and rape," despite the fact the state high court had "cautioned that significant differences between these crimes argue strongly against importing definitions from one context to the other.  [Citation.]"  (*Soto*, *supra*, at p. 243.)

Examining the argument, similar to the one defendant now makes, that "[a] virtually unbroken line of authority" post-*Cicero* "has interpreted duress, menace and threat as behavior inconsistent with the victim's freely given consent" (*Soto*, *supra*, 51

23.

Cal.4th at p. 254 (conc. & dis. opn. of Werdegar, J.)), the *Soto* majority stated: "In fact, *no* decision has actually held that consent is a defense when it is alleged that lewd acts were accomplished by duress. . . .  [T]he issue of duress was not presented in *Cicero*; therefore, the majority's discussion of it was dictum.  Although other decisions have repeated *Cicero*'s dictum, none has directly ruled that a child victim's consent negates a finding of duress under section 288(b)(1)."  (*Soto*, *supra*, at p. 247.)  The high court reiterated:  "The approach we endorse today is venerable.  California law has long recognized that consent is not a defense when the victim of a sex crime is a child under age 14."  (*Ibid.*)

Defendant asserts that regardless of the *Soto* majority's conclusion, *Cicero*'s determination that consent is a defense to aggravated lewd acts "went unchallenged" until *Soto* was decided.  To the contrary, as *Soto* itself observed, "*Cicero*'s discussion of victim consent has generated disagreement.  [Citations.]"  (*Soto*, *supra*, 51 Cal.4th at pp. 244-245, italics added; see, e.g., *People v. Cardenas* (1994) 21 Cal.App.4th 927, 937, fn. 7; *People v. Quinones*, *supra*, 202 Cal.App.3d at p. 1158; see also *In re Paul C.* (1990) 221 Cal.App.3d 43, 51.)

In light of the foregoing, we reject defendant's claim that *Soto*'s holding was an unforeseeable judicial enlargement of section 288, subdivision (b)(1).  The trial court correctly instructed the jury that consent was not a defense to the aggravated lewd acts charged in counts 1 and 2, and defendant's due process rights were not violated by virtue of the instruction.

**B.      Intent Required for Section 288.7, Subdivision (b)**

"In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."  (§ 20.)  Pursuant to CALCRIM No. 252, the trial court instructed, in pertinent part:

"The crimes and/or other allegations charged in this case require proof of the union or joint operation of act and wrongful intent.

"The following crimes and allegation require general criminal intent: . . . Count . . . 11, Penal Code Section 288.7(b), . . . sexual penetration with a child . . . .

"For you to find a person guilty of these crimes . . . , that person must not only commit the prohibited act, but must do so with a wrongful intent.

"A person acts with wrongful intent when he or she intentionally does a prohibited act. However, it's not required that he or she intend to break the law. The act required is explained in the instruction for each crime or allegation."

Defendant correctly contends the instruction was erroneous with respect to count 11, which was based on defendant's penetration of R.'s vagina with his finger.[15] When based on oral copulation of a child, a violation of section 288.7, subdivision (b) is indeed a general intent crime. (See, e.g., *People v. Thornton* (1974) 11 Cal.3d 738, 765, overruled on another ground in *People v. Martinez*, *supra*, 20 Cal.4th at pp. 234-237, disapproved on another ground in *People v. Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12; *People v. Brocklehurst* (1971) 14 Cal.App.3d 473, 476.) However, when, as in count 11, the violation of the statute is based on sexual penetration, it is a specific intent crime. (*People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167; *People v. Ngo*, *supra*, 225 Cal.App.4th at p. 157.) This is so because section 288.7, subdivision (b) proscribes sexual penetration, "as defined in Section 289," with a child. Subdivision (k)(1) of section 289 in turn defines sexual penetration as anal or genital penetration, by any foreign object, "for the purpose of sexual arousal, gratification, or abuse . . . ." In light of subdivision (k), a violation of section 289 is a specific intent crime. (*People v.*

---

[15] Defendant's failure to object to the instruction at trial did not forfeit the issue. (*People v. Nelson* (2016) 1 Cal.5th 513, 543.)

25.

*McCoy* (2013) 215 Cal.App.4th 1510, 1539-1540.)[16] It necessarily follows that "the same is true of sexual penetration of a child 10 years old or younger, since the definition of 'sexual penetration' is the same for both crimes." (*People v. ZarateCastillo*, *supra*, 244 Cal.App.4th at p. 1168.)

"The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]" (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311, abrogated on another ground in *People v. Merritt* (2017) 2 Cal.5th 819, 831.) The legal principle codified in section 20 (see *ante*, p. 24) is so basic a requirement " 'that it is an invariable element of every crime unless excluded expressly or by necessary implication.' " (*People v. Green* (1980) 27 Cal.3d 1, 53, overruled on another ground in *People v. Martinez*, *supra*, 20 Cal.4th at pp. 234-237 & disapproved on another ground in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3.) Thus, a trial court is obligated to give a correct instruction on the concurrence of act and specific intent

---

**16** *People v. Dillon* (2009) 174 Cal.App.4th 1367, 1380 held to the contrary, reasoning that "the mental state required to be found guilty of forcible sexual penetration is not the same as the specific intent to commit that crime. [Citation.]" We respectfully disagree with the *Dillon* court's conclusion. " 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' [Citation.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 82.) Statutory language "typically denoting specific intent crimes" includes " 'with the intent' " and " 'for the purpose of.' " (*People v. Hering* (1999) 20 Cal.4th 440, 446.) We find persuasive the reasoning of *People v. McCoy*, *supra*, 215 Cal.App.4th at page 1540, that the definition of sexual penetration contained in section 289, subdivision (k)(1) "refers to the defendant's intent to achieve an 'additional consequence,' i.e., arousal, gratification, or abuse. [Citation.] Thus, in drafting section 289, the Legislature required the act of penetration to be committed with the specific intent to gain sexual arousal or gratification or to inflict abuse on the victim." (Accord, *People v. ZarateCastillo*, *supra*, 244 Cal.App.4th at pp. 1167-1168.)

26.

whenever the offense charged is a specific intent crime.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 220.)

The correctness of jury instructions is determined from the entire charge of the court.  (*People v. Bolin*, *supra*, 18 Cal.4th at p. 328; *People v. Forrest* (2017) 7 Cal.App.5th 1074, 1087.)  Pursuant to CALCRIM No. 1128, the trial court instructed:

> "The following instruction applies to Counts 4 and 11:  The defendant is charged in Counts 4 and 11 with engaging in oral copulation or sexual penetration of a child ten years of age or younger in violation of Penal Code Section 288.7(b).  Count 4 pertains to [G.] and Count 11 pertains to [R.]. . . .  [¶] . . . [¶]

> "To prove that the defendant is guilty of this crime as alleged in Count 11 the People must prove that, one, the defendant engaged in an act of sexual penetration with [R.]; two, when the defendant did so [R.] was ten years of age or younger; three, at the time of the act the defendant was at least 18 years old.

> "Sexual penetration means penetration, however slight, of the genital or anal opening of the other person by a foreign object, substance, instrument, device or any unknown object for the purpose of sexual abuse, arousal or gratification.

> "Penetration for sexual abuse means penetration for the purpose of causing pain, injury or discomfort."

This instruction correctly defined sexual penetration and informed jurors of the requisite purpose.  We cannot say the instructions given here were correct, however, because CALCRIM No. 252 was erroneous on its face with respect to count 11 and conflicted with CALCRIM No. 1128.  (See *People v. Maurer* (1995) 32 Cal.App.4th 1121, 1125.)

Courts have differed concerning the proper standard for assessing prejudice with respect to this type of error.  (Compare *People v. Ngo*, *supra*, 225 Cal.App.4th at pp. 162-163 [suggesting " 'reasonable likelihood' " standard is appropriate] with *People v. ZarateCastillo*, *supra*, 244 Cal.App.4th at pp. 1168-1169 [applying beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*)]; see *People*

*v. Lee* (1987) 43 Cal.3d 666, 668-669 [applying *Chapman* standard to giving of contradictory and partially inaccurate instructions regarding intent-to-kill element of attempted murder]; *Ho v. Carey* (9th Cir. 2003) 332 F.3d 587, 592 ["reasonable likelihood" standard employed for ambiguous instruction inappropriate where disputed instruction erroneous on face].) We need not take sides, as we are convinced the error was harmless even under *Chapman*'s more stringent standard.

"[T]he question [*Chapman*] instructs the reviewing court to consider is not what effect the . . . error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. [Citation.] Harmless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.) "[W]here a reviewing court concludes beyond a reasonable doubt that the . . . element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." (*Neder v. United States* (1999) 527 U.S. 1, 17.)

As we previously observed, CALCRIM No. 1128 correctly set out the elements — including the intent — required for the jury to convict defendant of sexual penetration of a child 10 years of age or younger, as charged in count 11. The language of the instruction covered both the requisite intent per se and the requirement of a concurrence of act and specific intent.[17] The record on appeal — which we have carefully reviewed — contains no evidence that could rationally lead to a finding the act of penetration charged in count 11 was committed for a purpose other than sexual arousal, gratification,

---

[17] "Under section 20, the defendant's wrongful intent and his physical act must concur in the sense that the act must be motivated by the intent." (*People v. Green*, *supra*, 27 Cal.3d at p. 53.)

or abuse. Moreover, defendant did not contest the element, but rather denied any culpability. Since no rational jury could have found the specific intent element unproven, the error was harmless beyond a reasonable doubt. (*Neder v. United States*, *supra*, 527 U.S. at p. 19; *People v. Singh* (2004) 119 Cal.App.4th 905, 913.)

## IV[*]

## SENATE BILL NO. 620

Defendant was sentenced on June 3, 2016. The court stated defendant appeared to be "a child sexual predator who groomed his victims for eventual sexual gratification of himself." It found no circumstances in mitigation, and deemed defendant's explanation — that G. and R. took advantage of him and he had to do what he did because of their demands — "totally beyond comprehension." In aggravation, the court found defendant took advantage of a position of trust or confidence that he engendered in the victims, and that his conduct of such a violent sexual nature indicated a serious danger to society. Because there were multiple separate sexual assaults of one victim over a substantial period of time, together with the sexual assault of a second victim committed on separate occasions, the court found full consecutive sentences were required.

Count 2 was the only count for which the court imposed a determinate term. It found the circumstances in aggravation outweighed any circumstances in mitigation, and so selected the upper term of eight years. It then imposed a consecutive 10-year term for the firearm enhancement, pursuant to section 12022.53, subdivision (b).

At the time defendant was charged, convicted, and sentenced, section 12022.53, subdivision (h) provided: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." Thus, the trial court was required to impose the enhancement.

---

[*] See footnote, *ante*, page 1.

29.

After defendant was sentenced, the Legislature enacted Senate Bill No. 620. (Stats. 2017, ch. 682, § 2.) Effective January 1, 2018, subdivision (h) of section 12022.53 provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

Defendant's case was not yet final when the foregoing amendment went into effect. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306.) In light of this fact and the fact section 12022.53, subdivision (h) now vests the trial court with authority to lower defendant's sentence, we conclude the amendment applies to the instant case. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 424-425, petn. for review pending, petn. filed May 18, 2018; *People v. Robbins* (2018) 19 Cal.App.5th 660, 679; see *People v. Francis* (1969) 71 Cal.2d 66, 75-76.)[18]

Nevertheless, we conclude a remand would be a futile act, and therefore should not be ordered. In *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, a case arising under the Three Strikes law, the appellate court held: "Reconsideration of sentencing is required under [*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497] where the trial court believed it did not have discretion to strike a three strikes prior conviction, unless the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion to strike the allegations." (*People v. Gutierrez*, *supra*, at p. 1896.) This standard has been applied to the issue currently before us. (*People v. McDaniels*, *supra*, 22 Cal.App.5th at p. 425.)

---

**18** Neither party raised the issue whether defendant's case should be remanded to the trial court for an exercise of its new discretion. We informed them of our tentative conclusions, and afforded them the opportunity to address the issues.

In the present case, the trial court imposed the maximum possible sentence, even when, as to count 2, it had discretion to impose less than the upper term. It found defendant to be a child sexual predator, and that his conduct, which was of a violent sexual nature, indicated he was a serious danger to society. Defendant's arguments notwithstanding, we find it clear the trial court would not exercise its discretion to strike the section 12022.53, subdivision (b) enhancement. (*People v. Gutierrez, supra*, 48 Cal.App.4th at p. 1896.) No purpose would be served by remanding the matter.

## V[*]

### THE ABSTRACT OF JUDGMENT

The reporter's transcript shows the trial court imposed a term of 15 years to life in prison on count 1. On count 2, as previously discussed, it imposed a 10-year enhancement pursuant to section 12022.53, subdivision (b). Item number 6 of the indeterminate abstract of judgment correctly includes count 1 in the counts for which a term of 15 years to life was imposed (box 6.a.), but incorrectly also includes count 1 among the counts for which a term of 25 years to life was imposed (box 6.b.). In addition, item number 3 of the determinate abstract of judgment erroneously shows a 10-year enhancement imposed on count 2 pursuant to section 667.6, subdivision (d). We will order correction of these clerical errors.

### DISPOSITION

The judgment is affirmed. The trial court is directed to cause to be prepared an amended "ABSTRACT OF JUDGMENT – PRISON COMMITMENT – INDETERMINATE" (form CR-292) that lists count 1 in box 6.a., but omits it from box 6.b.; and an amended "FELONY ABSTRACT OF JUDGMENT—DETERMINATE" (form CR-290) that shows the 10-year enhancement listed in box 3. was imposed

---

[*]     See footnote, *ante*, page 1.

pursuant to Penal Code section 12022.53, subdivision (b); and shall cause a certified copy of same to be transmitted to the appropriate authorities.

_____
DETJEN, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.